```
 1  MELINDA HAAG (CABN 132612)
    United States Attorney
 2
    DAVID R. CALLAWAY (CABN 121782)
 3  Chief, Criminal Division

 4  KATHRYN HAUN (DCBN 484131)
    WILLIAM FRENTZEN (LABN 24421)
 5  Assistant United States Attorneys

 6  RAYMOND N. HULSER (MABN 551350)
    Chief, Public Integrity Section
 7
    RICHARD B. EVANS (DCBN 441494)
 8  Trial Attorney

 9      450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
10      Telephone: (415) 436-7200
        FAX: (415) 436-6753
11      kathryn.haun@usdoj.gov; william.frentzen@usdoj.gov; richard.evans@usdoj.gov

12  Attorneys for United States of America
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) NO. |
|---|---|
| Plaintiff, | ) PLEA AGREEMENT |
| v. | ) |
| SHAUN W. BRIDGES, | ) |
| Defendant. | ) |

I, Shaun W. Bridges, and the United States Attorney's Office for the Northern District of California and the United States Department of Justice, Public Integrity Section ("the government"), enter into this written plea agreement (the "Agreement") pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure:

The Defendant's Promises

1. I agree to plead guilty to Counts One and Two of the captioned Information charging me

1

with money laundering, in violation of 18 U.S.C. § 1957, and with obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2). I agree that the elements of the offenses are as follows:

Count One: (1) I knowingly engaged or attempted to engage in a monetary transaction;
(2) I knew that the transaction involved criminally derived property;
(3) The property had a value greater than $10,000;
(4) The property was, in fact, derived from wire fraud; and
(5) The transaction occurred in the United States.

I further agree that the elements of the underlying unlawful activity of wire fraud are:
(1) I knowingly devised a scheme or plan to defraud or to obtain money and property by means of false or fraudulent pretenses, representations, or promises;
(2) the statements made or facts omitted were material;
(3) I acted with the intent to defraud, that is, the intent to deceive or cheat; and
(4) I used or caused to be used an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Count Two: (1) I obstructed, influenced, or impeded an official proceeding; and
(2) in doing so, I acted corruptly.

I agree that the maximum penalties are as follows:

Count One:

| | | | |
|---|---|---|---|
| | a. | Maximum prison term | 20 years |
| | b. | Maximum fine | $250,000 or twice the gross gain or loss, whichever is greater |
| | c. | Maximum supervised release term | 3 years |
| | d. | Restitution | To be determined |
| | e. | Mandatory special assessment | $100 |
| | f. | Forfeiture | See below |

Count Two:

|   |    |                                  |                  |
|---|----|----------------------------------|------------------|
| a. | Maximum prison term             | 20 years         |
| b. | Maximum fine                    | $250,000         |
| c. | Maximum supervised release term | 3 years          |
| d. | Restitution                     | To be determined |
| e. | Mandatory special assessment    | $100             |
| f. | Forfeiture                      | See below        |

2. I agree that I am guilty of the offenses to which I am pleading guilty, and I agree that the following facts are true:

On or about January 25, 2013, I devised a scheme to defraud and to obtain money and property through false and fictitious representations. I utilized an administrator account on the Silk Road website belonging to another individual, and not intended for me or my personal use, to obtain access to that site. I am aware and agree that the government could prove that Silk Road was a website where illegal goods were posted for sale, including narcotics, and that payments were accepted on the site in Bitcoin. I used the administrator account to reset passwords of vendor accounts and other accounts to give me access to those accounts and any bitcoin in the accounts. I then moved a total of approximately 20,000 bitcoin from various Silk Road vendor accounts into a "wallet" over which I exercised control. The value at the time the bitcoin was stolen was approximately $350,000. On January 26, 2013, I moved the bitcoin into an account at Mt. Gox, a digital currency exchange based in Japan.

On January 27, 2013, I attempted to lull the manager of the Silk Road site, Ross William Ulbricht, a/k/a "Dread Pirate Roberts," a/k/a "DPR," by telling him that I, too, had had bitcoin stolen from me. This communication took place by interstate wire; I agree that the government could prove that Ulbricht was in the Northern District of California on that date, and that I was in Maryland.

Between March and May of 2013, I converted the bitcoin into U.S. currency and caused wire transfers of money totaling approximately $820,000 from the accounts at Mt. Gox into a Quantum International Investments, LLC, account I controlled at Fidelity. On June 2, 2014, I transferred funds from that Quantum Fidelity account into an account in the joint names of myself and a person known to the parties. Specifically, I conducted the following financial transactions:

3

| Date | Amount | Description of Financial Transaction |
|---|---|---|
| 3/6/13 | $98,511.08 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 3/8/13 | $98,968.00 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 3/13/13 | $99,968.62 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 3/18/13 | $99,968.74 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 3/19/13 | $99,968.64 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 4/5/13 | $99,968.08 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 4/16/13 | $99,969.34 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 4/26/13 | $99,969.32 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 5/7/13 | $25,559.37 | Wire transfer from Mt. Gox to Quantum Fidelity account |
| 6/2/14 | $225,000 | Wire transfer from Quantum Fidelity account to PNC Bank account in joint name |

I knew that the funds in each of the above transactions were the proceeds of wire fraud, and I carried out each of those transactions with the intent both to promote my ongoing wire fraud scheme and to conceal and disguise the nature, location, source, ownership, and origin of those illegal proceeds.

During the time that I devised and carried out this fraud and money laundering scheme, I was a Special Agent with the United States Secret Service and a member of the Electronic Crimes Task Force, and the Baltimore Silk Road Task Force -- which was actively engaged in investigating Silk Road, its vendors and buyers, and Dread Pirate Roberts, and for which there was an ongoing Grand Jury investigation in the District of Maryland. I agree that the Baltimore Silk Road Grand Jury investigation was an official proceeding. As a United States Secret Service Special Agent, I held a position of public trust and I abused that position. I further agree that my activities obstructed, influenced, and impeded the Baltimore Grand Jury related to its Silk Road investigation as well as its resulting case in the District of Maryland against Ulbricht by, among other things, (1) obstructing and impeding the ability of the investigation to fully utilize a cooperator's access to Silk Road after my fraud, (2) causing the Task Force and the Grand Jury to spend time and effort to investigate the thefts from Silk Road that I committed, (3) creating additional incentive for Ulbricht to attempt to hire someone to kill a cooperator

4

1 whom Ulbricht suspected of committing thefts I had in fact committed, and (4) obstructing, influencing,
2 and impeding the Grand Jury's investigation into Ulbricht in the District of Maryland. I agree that I
3 acted corruptly in obstructing, influencing, and impeding the Grand Jury's Silk Road investigation.

4 I agree that by May of 2014, there was also an active San Francisco-based Grand Jury
5 investigation into potential misconduct by Drug Enforcement Administration (DEA) Special Agent Carl
6 M. Force, IV, and that the San Francisco Grand Jury subsequently began to investigate my conduct. I
7 further agree that the San Francisco Grand Jury investigation was an official proceeding.

8 On May 28, 2014, I was interviewed by a Special Agent with the Federal Bureau of Investigation
9 (FBI) and I intentionally misled that agent. On November 13, 2014, I was interviewed by a Special
10 Agent from the Department of Justice Office of Inspector General and I intentionally misled that agent
11 as well. During January and February of 2015, I consulted with another employee of the United States
12 Secret Service both before and after that employee had an interview on the subject of this investigation
13 with Special Agents from the Department of Homeland Security Office of Inspector General (DHS OIG)
14 and the FBI. I met with that employee before and after the employee's interview and we discussed the
15 subject of the interview and agreed to tell a false consistent story regarding searches conducted on a
16 database controlled by the Financial Crimes Enforcement Network (FinCEN). On ~~April 3, 2015~~ March 30, 2015 in the
17 Northern District of California, I also misrepresented certain facts to agents with the FBI, ~~DHS OIG,~~
18 ~~Department of Justice Office of Inspector General~~, and Internal Revenue Service Criminal
19 Investigations, with respect to the full scope of the FinCEN database searches.

20 I understand and agree that each of the interviews and actions described in the preceding
21 paragraph were in connection with the San Francisco Grand Jury investigation. I further agree that by
22 corruptly encouraging another Secret Service employee to tell a false story to federal agents and by lying
23 to federal agents myself, I obstructed, influenced, and impeded the San Francisco-based Grand Jury
24 investigation into my own criminal conduct and that of former DEA Special Agent Carl M. Force, IV.

25 3. I agree to give up all rights that I would have if I chose to proceed to trial, including the
26 rights to a jury trial with the assistance of any attorney; to confront and cross-examine government
27 witnesses; to remain silent or testify; to move to suppress evidence or raise any other Fourth or Fifth
28 Amendment claims; to any further discovery from the government; and to pursue any affirmative

5

1 defenses and present evidence. I agree, for purposes of entering this guilty plea, sentencing and all other
2 proceedings relevant to the filing of this Agreement, to consent to the jurisdiction of the United States
3 District Court for the Northern District of California. I expressly waive my right to object to venue in
4 the Northern District of California.

5     4. I agree to give up my right to appeal my conviction, the judgment, and orders of the
6 Court. I also agree to waive any right I have to appeal any aspect of my sentence, including any orders
7 relating to forfeiture and or restitution.

8     5. I agree not to file any collateral attack on my conviction or sentence, including a petition
9 under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was
10 ineffective in connection with the negotiation of this Agreement or the entry of my guilty plea. I also
11 agree not to seek relief under 18 U.S.C. §3582.

12     6. I agree not to ask the Court to withdraw my guilty plea at any time after it is entered. I
13 understand that by entering into this Agreement: (a) I agree that the facts set forth in Paragraph 2 of this
14 Agreement shall be admissible against me under Fed. R. Evid. 801(d)(2)(A) in any subsequent
15 proceeding, including at trial, in the event I violate any of the terms of this Agreement, and (b) I
16 expressly waive any and all rights under Fed. R. Crim. 11(f) and Fed. R. Evid. 410 with regard to the
17 facts set forth in Paragraph 2 of this Agreement in such subsequent proceeding. I understand that the
18 government will not preserve any physical evidence obtained in this case.

19     7. I agree that the Court will use the Sentencing Guidelines to calculate my sentence. I
20 understand that the Court must consult the Guidelines and take them into account when sentencing,
21 together with the factors set forth in 18 U.S.C. § 3553(a). I also understand that the Court is not bound
22 by the Guidelines calculations below, the Court may conclude that a higher Guidelines range applies to
23 me, and, if it does, I will not be entitled, nor will I ask to withdraw my guilty plea. I agree that
24 regardless of the sentence that the Court imposes on me, I will not be entitled, nor will I ask, to
25 withdraw my guilty plea. I also agree that the Sentencing Guidelines offense level will be calculated as
26 follows and that I will not ask for any other adjustment to or reduction in the offense level or for a
27 downward departure from the Guidelines range as determined by the Court. The parties have reached
28 no agreement regarding my Criminal History Category.

6

Count One:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2S1.1: | 7 (§2B1.1(a)(1)) |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | +14 (§2B1.1(b)(1)(H)) (amount of loss) |
| | | +1 (§2S1.1(b)(2)(B)) (conviction for § 1957) |
| c. | Adjustments under U.S.S.G. Ch. 3: | +2 (§3B1.3) (abuse of position of trust) +2 (§3C1.1) (obstruction of justice) |

  d. Acceptance of Responsibility: If I meet the requirements of U.S.S. G.§ 3E1.1, I may be entitled to a three level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing: -3

  e. The parties have reached no agreement on whether a 2-level enhancement for sophisticated means/substantial portion of scheme outside U.S. would apply under U.S.S.G. § 2B1.1(b)(10) and agree that that issue may be argued at sentencing.

| | | |
|---|---|---|
| f. | Adjusted Offense Level: | 23-25 depending on the applicability of § 2B1.1(b)(10) |

Count Two:

| | | |
|---|---|---|
| a. | Base Offense Level, U.S.S.G. §2S1.1: | 14 (§2J1.2(a)) |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | +3 (§2J1.2(b)(2)) (substantial interference) |
| c. | Adjustments under U.S.S.G. Ch. 3: | +2 (§3B1.3) (abuse of position of trust) |

  d. Acceptance of Responsibility: If I meet the requirements of U.S.S. G.§ 3E1.1, I may be entitled to a three level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing: -3

  e. The parties have reached no agreement on whether a 2-level enhancement for extensiveness of scope would apply under U.S.S.G. § 2J1.2(b)(3) and agree that the issue may be argued at sentencing.

| | | |
|---|---|---|
| f. | Adjusted Offense Level: | 16-18 |

7

| | |
|---|---|
| 1   Combined Offense Level: | 23-25 depending on the applicability of contested sentencing enhancements |

8. I agree that regardless of any other provision of this Agreement, the government may and will provide the Court and the Probation Office with all information relevant to the charged offense and the sentencing decision.

9. I agree to pay restitution for all the losses caused by all the schemes or offenses with which I was charged in this case, and I agree that the amount of restitution will not be limited to the loss attributable to the counts to which I am pleading guilty, pursuant to 18 U.S.C. § 3663(a)(3). I agree to pay restitution in an amount to be set by the Court. I agree that any fine, forfeiture, or restitution imposed by the Court against me will be immediately due and payable and subject to immediate collection by the government and I understand that the government may seek immediate collection of the entire fine, forfeiture, or restitution from any assets without regard to any schedule of payments imposed by the Court or established by the Probation Office. I agree that I will make a good-faith effort to pay any fine, forfeiture, or restitution I am ordered to pay. Before or after sentencing, I will upon request of the Court, the government, or the Probation Office, provide accurate and complete financial information, submit sworn statements and give depositions under oath concerning my assets and my ability to pay, surrender assets I obtained as a result of my crimes, and release funds and property under my control in order to pay any fine, forfeiture, or restitution. I agree to pay the special assessment at the time of sentencing.

10. I agree not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence. I also agree not to violate the terms of my pretrial release; not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government; and not to fail to comply with any of the other promises I have made in this Agreement. I agree not to have any contact with any victims or witnesses in this case, either directly or indirectly, before and after I am sentenced. This includes, but is not limited to, personal contact, telephone, mail, or electronic mail contact, or any other written form of communication, and includes any harassing, annoying, or intimidating conduct by me directed to any victims or witnesses. I agree that the Court

1 may also include this no-contact provision as a condition of my supervised release term. I agree that if I
2 fail to comply with any promises I have made in this Agreement, then the government will be released
3 from all of its promises in this Agreement, including those set forth in the Government's Promises
4 Section below, but I will not be released from my guilty plea.

5     11. I agree to forfeit the following property (hereinafter "subject property"):

6     a. $165,529.88 from my Fidelity Brokerage account, held in the name of Quantum
7 Investments;

8     b. $306,000 held in trust by my attorney of record;

9     c. $4745.92 from my PNC Bank Account, jointly held in the name of Shawn Bridges and a
10 person known to the parties.

11 I agree to provide a cashier's check made payable to the United States for the amounts listed
12 above in Paragraph 11 (a)-(c) to Assistant United States Attorney Arvon Perteet, United States
13 Attorney's Office, Northern District of California, 450 Golden Gate Avenue, San Francisco, California,
14 94102, with the criminal docket number noted on the face of the check within 48 hours of the entry of
15 my guilty plea.

16 I admit that the subject property constitutes money involved in money laundering and/or
17 proceeds from obstruction of justice and wire fraud, and thus is forfeitable to the United States pursuant
18 to the provisions of 18 U.S.S § 981(a)(1)(c), 18 U.S.C. § 982(a)(1)(A); 28, U.S.C. § 2461(c) and the
19 procedures outlined in Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853. I
20 relinquish any and all right, title, and interest I may have in the subject property and agree that such
21 right, title, and interest can be forfeited to the United States without further notice to me. I also agree I
22 will not contest, nor assist anyone in contesting any administrative or judicial forfeiture proceeding
23 (whether criminal, civil, state or federal) which may be brought against said property. I further agree to
24 waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus,
25 or any other means) to any forfeiture carried out in accordance with this Agreement on any grounds,
26 including that the forfeiture constitutes an excessive fine or punishment or that the forfeiture proceeding
27 was brought in violation of the statute of limitations.

28 I agree that the money involved in the wire transfers discussed above in Paragraph 2, is subject to

9

1 | forfeiture, and I agree to pay a forfeiture money judgment in the amount of $651,000 (the "Forfeiture
2 | Money Judgment"). I further agree that the assets identified in Paragraph 11 (a) - (c), which were
3 | obtained through violations of money laundering, wire fraud, and obstruction of justice, can be forfeited
4 | and will be used to offset the Forfeiture Money Judgment. I agree to fully assist the Government in
5 | effectuating the payment of the Forfeiture Money Judgment. I will fully disclose all my assets to the
6 | United States when requested, including completing a United States Department of Justice Financial
7 | Statement under penalty of perjury after entering my guilty plea. If the United States discovers that I
8 | have failed to disclose assets to which I have any interest (the "Undisclosed Assets"), I hereby consent
9 | to the forfeiture of such Undisclosed Assets to the United States to satisfy the Forfeiture Money
10 | Judgment. I admit that the Forfeiture Money Judgment constitutes the net proceeds that I obtained,
11 | directly or indirectly as a result of violations of 18 U.S.C. § 1343, 18 U.S.C. § 1957, and 18 U.S.C. §
12 | 1512(c)(2), and/or are substitute asset as defined in 21 U.S.C. § 853(p) and 18 U.S.C § 982(b), and thus
13 | are subject to forfeiture to the United States upon my guilty plea pursuant to this agreement. I agree that
14 | all payments that I make towards the Forfeiture Money Judgment shall be made certified or bank check,
15 | payable to the "United States" and sent by overnight delivery or certified U.S. Mail to United States
16 | Attorney Arvon Perteet, United States Attorney's Office, Northern District of California, 450 Golden
17 | Gate Avenue, San Francisco, California, 94102, with the criminal docket number noted on the face of
18 | the check.

19     12. I agree that this Agreement contains all of the promises and agreements between the
20 | government and me, and I will not claim otherwise in the future. No modification of this Agreement
21 | shall be effective unless it is in writing and signed by all parties.

22     13. I agree that the Agreement binds the U.S. Attorney's Office for the Northern District of
23 | California and the United States Department of Justice, Public Integrity Section, only, and does not bind
24 | any other federal, state, or local agency with the exception that the U.S. Attorney's Office for the
25 | District of Maryland agrees that it will not file charges against the defendant for obstructing the
26 | Baltimore Grand Jury's investigation into the Silk Road as recounted above in Paragraph 2 given that
27 | the defendant is accounting for the conduct here in the instant plea.

28

10

The Government's Promises

14. The government agrees not to file any additional charges against the defendant that could be filed for (1) his role in stealing money from Silk Road and Silk Road account holders on January 25 and 26, 2013, (2) for financial transactions conducted with the proceeds from these thefts from Silk Road and Silk Road account holders, and (3) for obstructing the investigations of, and for false statements to, the Baltimore Silk Road Task Force and the San Francisco-based investigation into Shaun Bridges and Carl M. Force, IV, that led to the captioned Information.

15. The government agrees to recommend the Guideline calculations set out above, unless the defendant violates the terms of the Agreement above or fails to accept responsibility.

The Defendant's Affirmations

16. I confirm that I have had adequate time to discuss this case, the evidence, and the Agreement with my attorney and that my attorney has provided me with all the legal advice that I requested.

17. I confirm that the while I considered signing this Agreement, and at the time I signed it, I was not under the influence of any alcohol, drug, or medicine that would impair my ability to understand the Agreement.

//
//
//
//
//

11

1  18. I confirm that my decision to enter a guilty plea is made knowing the charges that have been brought against me, any possible defense, and the benefits and possible detriments of proceeding to trial. I also confirm that my decision to plead guilty is made voluntarily, and no one coerced or threatened me to enter into this Agreement.

Dated: 6/15/15

SHAUN W. BRIDGES
Defendant

MELINDA HAAG
United States Attorney

Dated: 6|15|15

KATHRYN HAUN
WILLIAM FRENTZEN
Assistant United States Attorneys

RAYMOND N. HULSER
Chief, Public Integrity Section
U.S. Department of Justice

Dated: 6/15/15

RICHARD B. EVANS
Trial Attorney

19. I have fully explained to my client all the rights that a criminal defendant has and all the terms of this Agreement. In my opinion, my client understands all the terms of this Agreement and all the rights my client is giving up by pleading guilty, and, based on the information now known to me, my client's decision to plead guilty is knowing and voluntary.

Dated: 6·15·15

STEVEN H. LEVIN, ESQ.
Levin and Curtlett, LLC
Attorney for Defendant

12