Pages 1 - 39

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE RICHARD SEEBORG, JUDGE

```
UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
  vs.                          )  NO. CR 15-319 RS
                               )
SHAUN W. BRIDGES,              )
                               )  San Francisco, California
            Defendant.         )  Wednesday
                               )  August 31, 2015
_____)  3:31 p.m.
```

TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

```
For Plaintiff:        MELINDA HAAG
                      United States Attorney
                      450 Golden Gate Avenue
                      San Francisco, California  94102
                 BY:  KATHRYN R. HAUN
                      WILLIAM FRENTZEN
                      Assistant United States Attorneys
                      and
                      UNITED STATES DEPARTMENT OF JUSTICE
                      Criminal Division, Public
                         Integrity Section
                      1400 New York Avenue N.W.
                      12th Floor
                      Washington, D.C.  20005
                 BY:  RICHARD B. EVANS, ESQ.



Reported by:          BELLE BALL, CSR #8785, CRR, RDR
                      Official Reporter, U.S. District Court


(Appearances continued, next page)
```

```
APPEARANCES, CONTINUED:


For Defendant:          LEVIN AND CURLETT LLC
                        201 North Charles Street.
                        Suite 2000
                        Baltimore, Maryland  21201
                   BY:  STEVEN H. LEVIN, ESQ.
                        and
                        SNELL AND WILMER
                        50 West Liberty Street
                        Suite 510
                        Reno, Nevada  89501
                   BY:  CRAIG DENNEY, ESQ.


Also Present:           BRAD T. WILSON,
                        U.S. Pretrial Services Officer
```

Case 3:15-cr-00319-RS   Document 169-7   Filed 06/13/18   Page 3 of 40
Case 3:15-cr-00319-RS   Document 232   Filed 04/02/18   Page 3 of 40

3

```
 1  MONDAY, AUGUST 31, 2015                          3:03 P.M.
 2                  P R O C E E D I N G S
 3       THE CLERK:  Calling Criminal Case No. 15-319, United
 4  States versus Shaun Bridges.  Please step forward and state
 5  your appearances.
 6       MS. HAUN:  Good afternoon, Your Honor.  Kathryn Haun
 7  for the United States.  I'm joined by my colleagues Mr. William
 8  Frentzen from my office, and also Richard Evans from the Public
 9  Integrity Section of the Department.
10       THE COURT:  Good afternoon.
11       MR. FRENTZEN:  Good afternoon, Your Honor.
12       MR. LEVIN:  Good afternoon, Your Honor.  Steven Levin
13  on behalf of Mr. Bridges, who is standing to my right.
14       THE COURT:  Good afternoon.
15       MR. DENNEY:  Craig Denney, Your Honor.
16       THE COURT:  Good afternoon.  This matter is on my
17  calendar for, my understanding is, the entry of a plea.  Is
18  that correct?
19       MS. HAUN:  That's correct, Your Honor.  And the
20  parties lodged some time ago the executed plea agreement.  And
21  there have been no changes since we lodged that with the Court.
22       THE COURT:  Okay, very good.
23       MS. HAUN:  And if the Court is all right with it
24  today, I propose, since I represented the government in the
25  Force entry of plea, I would like to ask for the Court's
```

Case 3:15-cr-00319-RS  Document 169-7  Filed 06/13/18  Page 4 of 40
Case 3:15-cr-00319-RS  Document 232  Filed 04/02/18  Page 4 of 40

4

1   permission today for my colleague Mr. Evans from the Public

2   Integrity section, if it's all right with the Court, for him to

3   handle some of the elements and the factual basis.

4           **THE COURT:**  Sure.  That's fine with me.

5           **MS. HAUN:**  Thanks.

6           **THE COURT:**  Mr. Bridges, my understanding is that you

7   are prepared to enter a plea this afternoon.  Is that how you

8   would like to proceed, sir?

9           **THE DEFENDANT:**  Yes, Your Honor.

10          **THE COURT:**  All right.  I'm going to ask my courtroom

11  deputy to put you under oath at this time.

12      (Defendant placed under oath)

13          **THE COURT:**  Mr. Bridges, you are now under oath.  I'm

14  going to be asking you some questions.  You need to answer my

15  questions truthfully.  In the event that you were to fail to

16  answer my questions truthfully, you could face charges in

17  addition to those that are the subject of our discussion this

18  afternoon.

19      Do you understand that?

20          **THE DEFENDANT:**  I understand.

21          **THE COURT:**  Okay.  What is your full name, sir?

22          **THE DEFENDANT:**  Shaun Wesley Bridges.

23          **THE COURT:**  Okay.  And how old are you, Mr. Bridges?

24          **THE DEFENDANT:**  Thirty-three.

25          **THE COURT:**  Okay.  What was the highest grade level

1  you reached in school?

2          THE DEFENDANT:  Sixteenth.

3          THE COURT:  Okay.  You have been represented by

4  counsel in this case.  And, counsel's appearance was on the

5  record, but let me mention their names again.  It's Mr. Evans?

6          MR. LEVIN:  Steve Levin, Your Honor.

7          THE COURT:  Mr. Levin, excuse me.  And then

8  apparently other counsel.  Have you been satisfied with the

9  representation that you have received in the case?

10          THE DEFENDANT:  I have, Your Honor.

11          THE COURT:  All right.  Now, in the last 24 hours

12  have you had occasion to take any prescription medication, any

13  drugs, or alcohol, that would affect your ability to understand

14  our discussion here this afternoon?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Now, I have been handed a plea

17  agreement -- provided with it, actually, in advance -- and it

18  has various signatures on it, one of which indicates that it's

19  your signature.

20      Is that your signature (Indicating), Mr. Bridges?

21          THE DEFENDANT:  That is, sir.

22          THE COURT:  All right.  And did you have an

23  opportunity to review this plea agreement?

24          THE DEFENDANT:  I did.

25          THE COURT:  Did you have an opportunity to discuss it

Case 3:15-cr-00319-RS Document 169-7 Filed 06/13/18 Page 6 of 40
Case 3:15-cr-00319-RS Document 132 Filed 04/02/18 Page 6 of 40

6

1   with your counsel?

2        **THE DEFENDANT:**  Yes, sir.

3        **THE COURT:**  Now, are all of the understandings that

4   you have with the government that are prompting you to proceed

5   by way of a plea this afternoon, are they all contained in this

6   written document?

7        **THE DEFENDANT:**  They are, sir.

8        **THE COURT:**  Okay.  In other words, what I want to

9   confirm is as far as you know, there are no side agreements or

10  oral understandings.

11       **THE DEFENDANT:**  Correct.

12       **THE COURT:**  Okay.  Has anyone threatened or coerced

13  you in any way to enter a guilty plea this afternoon?

14       **THE DEFENDANT:**  No, sir.

15       **THE COURT:**  This is your voluntary decision to

16  proceed this way?

17       **THE DEFENDANT:**  Yes, sir.

18       **THE COURT:**  This particular plea agreement is entered

19  into under a rule we refer to as Rule 11(c)(1)(A) and

20  11(c)(1)(B).  Under the provisions of that rule, this plea

21  agreement contains various recommendations to me as to how I

22  should assess and what sentence I should impose.

23     Do you understand that?

24       **THE DEFENDANT:**  Yes, sir.

25       **THE COURT:**  And do you also understand that these are

Case 3:15-cr-00319-RS Document 169-7 Filed 06/13/18 Page 7 of 40
Case 3:15-cr-00319-RS Document 132 Filed 04/02/18 Page 7 of 40

7

1  simply recommendations, and that it will be for me to decide

2  what the appropriate sentence is?

3  　　　　　**THE DEFENDANT:**  I do, sir.

4  　　　　　**THE COURT:**  Okay.  And that sentence can, under the

5  law, go up to the statutory maximum of the charges, the

6  particular statutes under which you are charged.

7  　　　　And in this instance, you are charged in Counts 1 and 2 of

8  the information that is the subject of our discussion today

9  with money laundering in violation of Title 18, United States

10  Code Section 1957, and with obstruction of justice in violation

11  of Title 18, United States Code Section 1512(c)(2).

12  　　　　On that first count, the money-laundering count, the

13  maximum prison term you could receive in the event of

14  conviction is 20 years imprisonment; a $250,000 fine; or twice

15  the gross gain or loss, whichever is greater; a three-year term

16  of supervised release; restitution to be determined; a $100

17  mandatory special assessment; and forfeiture, as appropriate.

18  　　　　Under Count 2, which is the obstruction-of-justice count,

19  again, the maximum penalty could you receive in the event of

20  conviction would be 20 years imprisonment; $250,000 fine;

21  three-year term of supervised release; restitution, to be

22  determined; $100 mandatory special assessment; and forfeiture,

23  as appropriate.

24  　　　　Do you understand that your sentence, under the law, that

25  I can impose could be up to that maximum on each of those

Case 3:15-cr-00319-RS Document 169-7 Filed 06/13/18 Page 8 of 40
Case 3:15-cr-00319-RS Document 132 Filed 04/02/18 Page 8 of 40

8

1  counts?

2          **THE DEFENDANT:**  I do, sir.

3      **THE COURT:**  All right.  Now in this plea agreement,

4  in particular in Paragraphs 4 and 5, it indicates the language

5  of the agreement is that you are giving up various of your --

6  the bulk of your appellate rights.

7      In Paragraph 4 you are giving up what's called your direct

8  rights to appeal.  And then in Paragraph 5 it indicates you are

9  giving up your collateral appellate rights, sometimes referred

10  to as "habeas" rights, with the exception that you reserve the

11  right to claim ineffective assistance of counsel in connection

12  with negotiating this plea agreement and the entry of your

13  guilty plea.

14      Do you understand that under the terms of the plea

15  agreement, that is what it indicates, that you are giving up

16  those appellate rights?

17          **THE DEFENDANT:**  I do, sir.

18      **THE COURT:**  Now, in this case, you have a right to

19  maintain a not-guilty plea.  You have a right to proceed to

20  trial in the case.  At that trial, you would have the right to

21  be represented by counsel.  Your counsel would have an

22  opportunity to call witnesses to testify in your behalf, and

23  cross-examine any witnesses the government calls -- would call

24  to testify against you.

25      At that trial, you would have a right to testify.  At the

Case 3:15-cr-00319-RS   Document 169-7   Filed 06/12/18   Page 9 of 40
Case 3:15-cr-00319-RS   Document 132-7   Filed 04/02/18   Page 9 of 40

9

 1  same time, you could elect not to testify.  And if you made

 2  that decision, the government would be precluded from making

 3  any reference to the fact that you had made that decision.

 4      The case would then be submitted to a jury of 12

 5  individuals.  And in order for you to be found guilty, all 12

 6  would have to conclude that the government had proven your

 7  guilt beyond a reasonable doubt.  And then, if you are

 8  convicted, you would have a right to appeal and a right to be

 9  represented in that process.

10      If you enter your guilty plea today, you will be giving up

11  all those rights.  Do you understand that?

12          **THE DEFENDANT:**  I do sir.

13          **THE COURT:**  Very well.  Again, Mister --

14      **MR. FRENTZEN:**  Evans, Your Honor.

15          **THE COURT:**  Mr. Evans, if you could review for us the

16  elements of the charges that the government would be prepared

17  to prove, and also the factual basis that the government would

18  be prepared to present.

19      **MR. EVANS:**  Yes, Your Honor.  Should this -- the

20  elements of the first count, Count 1, 18 U.S.C., Section 1957,

21  money laundering, the elements are as follows:  That the

22  Defendant knowingly engaged or attempted to engage in a

23  monetary transaction.

24      Two, that he knew the transaction involved

25  criminally-derived property.

1          Three, that the property had a value greater than $10,000.

2          Four, the property was in fact derived from wire fraud.

3          And five, that the transaction occurred within the United

4     States.

5          Wire fraud being the underlying -- the SUA for this

6     particular money-laundering count.  And the elements of wire

7     fraud are that:  The Defendant knowingly devised a scheme or

8     plan to defraud or to obtain money or property by means of

9     false or fraudulent pretenses, representations or promises.

10         Two, that the statements made or facts omitted were

11    material.

12         And three, that he acted with intent to defraud, and that

13    is the intent to deceive or cheat.

14         And four, that he used or caused to be used an interstate

15    wire communication to carry out or attempt to carry out an

16    essential part of that scheme.

17         In terms of Count 2 the obstruction count, a violation of

18    18 U.S.C. Section 1512(c)(2), the elements are that the

19    Defendant obstructed, influenced or impeded an official

20    proceeding.  And two, that he did so -- in doing so, he acted

21    corruptly.

22         And there are, in fact, two official proceedings of which

23    the factual basis address.  And I'll go through those at this

24    point.

25         Your Honor, in terms of the money laundering and the

1  obstruction, the factual basis agreed to by the parties as

2  reflected in the plea agreement indicates that on or about

3  January 25, 2013, the Defendant devised a scheme to defraud and

4  obtain money and property through false and fictitious

5  representations, in that he used an administrator account on

6  the Silk Road website belonging to another individual, and not

7  intended for his personal use, to gain access to that site.

8       Once he had gained access to that Silk Road website, he

9  used the information to change passwords and PINs on various

10 accounts and to move approximately 20,000 Bitcoins from various

11 Silk Road vendor accounts into a wallet, which he exercised

12 control.  And the value of those Bitcoin at that time was

13 approximately $350,000.

14      And that on or about January 26, 2013, he moved that

15 Bitcoin into an account at Mt. Gox, which is a digital currency

16 exchange based in Japan.

17      Subsequently, on October 27, 2013 (sic), he attempted to

18 lull the manager of the Silk Road website -- that's William

19 Ross -- Ross William Ulbricht, also known as "Dread Pirate

20 Roberts" -- by telling them that the Bitcoin actually had been

21 stolen from him.

22      And that that communication, the government if this had

23 gone to trial could prove took place when Mr. Ulbricht was in

24 the Northern District of California on that date, when the

25 Defendant was in Maryland at the time.

Case 3:15-cr-00319-RS   Document 169-7   Filed 06/13/18   Page 12 of 40
Case 3:15-cr-00319-RS   Document 232   Filed 04/02/16   Page 12 of 40

12

1       Now, subsequently to that, Your Honor, the United States

2  would prove and the parties have agreed to in the factual basis

3  that between March and May of 2013, the Defendant converted the

4  Bitcoin into U.S. currency and caused wire transfers of the

5  money totaling approximately $820,000 at the time from the

6  accounts at Mt. Gox into a Quantum International Investments,

7  LLC account at Fidelity in the United States.

8       And subsequently, that on June 2nd, 2014, the Defendant

9  transferred funds from that Quantum Fidelity account into an

10 account in the joint names of himself and one other individual.

11      Your Honor, the factual basis lists the specific wires,

12 the dates of those wires, and the amounts on Page 4 of the plea

13 agreement.  And the parties have agreed, stipulated in the

14 factual basis part of the plea agreement that the funds in

15 these transactions were proceeds of wire fraud.  And that the

16 Defendant carried out each of these transactions with the

17 intent to promote an ongoing wire fraud scheme, and to conceal

18 and disguise the nature, the location, the source, ownership,

19 and origin of these illegal proceeds.

20      Now, during this time, Your Honor, that the Defendant

21 devised and carried out this fraud money-laundering scheme, he

22 was a Special Agent of the United States Secret Service, and a

23 member of the Electronic Crimes Task Force of the Baltimore

24 Silk Road Task Force.  And was actively engaged in

25 investigating the Silk Road, its vendors, buyers, as well as

1  Dread Pirate Roberts, for which there was an ongoing grand jury
2  investigation in the District of Maryland.  And, the Defendant
3  has agreed that the Baltimore Silk Road grand jury
4  investigation was, in fact, an official proceeding.
5       Now, the Defendant, as a Secret Service Special Agent,
6  held a position of trust.  And he abused that trust, abused
7  that position.
8       Defendant in the factual basis further agrees that his
9  activities obstructed, influenced, and impeded the grand jury
10 -- the Baltimore grand jury investigation into the Silk Road,
11 as well as resulting in the case of Maryland -- excuse me -- in
12 the District of Maryland against Ulbricht, among other things,
13 obstructing and impeding the ability of the investigation to
14 fully utilize the corroborators' access to the Silk Road after
15 the Defendant's fraud, causing the task force and the grand
16 jury to spend time and effort to investigate the thefts of the
17 Silk Road that he committed, creating additional incentive for
18 Mr. Ulbricht to attempt to hire someone to kill a cooperator
19 whom Mr. Ulbricht suspected of committing the thefts that in
20 fact he had committed.  And finally, obstructing and
21 influencing and impeding the grand jury's investigation of or
22 into Ulbricht in the District of Maryland.
23      Your Honor, the factual basis also agreed to by the
24 parties indicates that as of May of 2014, there was an active
25 San Francisco-based grand jury investigation into the potential

1   misconduct of a Drug Enforcement Administration agent, DEA

2   agent by the name of Carl Mark Force.  And that that

3   San Francisco grand jury subsequently began to investigate the

4   Defendant's misconduct.

5       On or about May 28, 2014, the Defendant was interviewed by

6   Special Agent with the FBI, and intentionally misled that agent

7   as part of the San Francisco-based grand jury investigation.

8       Additionally, on November 13, 2014, he was again

9   interviewed by a Special Agent from the Department of Justice,

10  Office of Inspector General, and he intentionally misled that

11  agent as well.

12      And during January and February of 2015, he consulted with

13  another employee of the United States Secret Service, both

14  before and after that employee was interviewed by agents for

15  the Department of Homeland Security Office of Inspector General

16  and the FBI.  And that the Defendant agreed with the other

17  witness to tell a false consistent story regarding the searches

18  conducted on a database controlled by the Financial Crimes

19  Enforcement Network, or FinCEN.

20      Finally, Your Honor, on March 30, 2015, in the Northern

21  District of California, the Defendant also misrepresented

22  certain facts to agents with the FBI and the Internal Revenue

23  Service criminal investigations with respect to the full scope

24  of the FinCEN database searches.  And these acts, Your Honor,

25  obstructed the investigation of the San Francisco-based grand

 1    jury.

 2        Those are the facts agreed upon by the parties' plea

 3    agreement, Your Honor.

 4            **THE COURT:**  Mr. Bridges, I know that was a long

 5    recitation of facts.  I'm going to go over them with you.

 6        But, let me begin by just asking you the question:  You've

 7    heard the prosecutor review all those facts, correct?

 8            **THE DEFENDANT:**  I have, sir.

 9            **THE COURT:**  And do you -- and are they correct?

10            **THE DEFENDANT:**  Yes, sir.

11            **THE COURT:**  All right.

12           **MR. LEVIN:**  Your Honor, if I may, I may have misheard

13    Mr. Evans.

14            **THE COURT:**  Yes.

15           **MR. LEVIN:**  It's quite possible.  But I thought early

16    on had said a date of October, 2013 as opposed to January 27,

17    2013, when some event happened.

18            **THE COURT:**  This is the reference to the lulling of

19    the manager of Silk Road?

20           **MR. LEVIN:**  (Nods head)

21            **THE COURT:**  I'm going to go over all those facts now,

22    so hopefully that will be clarified, if there was a date

23    misstatement.

24        So I'm not going to go over every single fact but I'm

25    going to go over several of these, Mr. Bridges.

1    Is it correct that on or about January 25th of 2013, you

2 devised a scheme to defraud and to obtain money and property

3 through false and fictitious representations?

4         **THE DEFENDANT:**  Yes, Your Honor.

5         **THE COURT:**  Is it correct that you utilized an

6 administrator account on the Silk Web website -- Silk Road

7 website, belonging to another individual and not intended for

8 you, for your personal use, to obtain access to that site?

9         **THE DEFENDANT:**  Yes, Your Honor.

10         **THE COURT:**  All right.  And are you aware -- and you

11 are aware, is it correct, in that you agree that the government

12 could prove that Silk Road was a website where illegal goods

13 were posted for sale, including narcotics, and that payments

14 were accepted on this site in Bitcoin?

15         **THE DEFENDANT:**  Yes, Your Honor.

16         **THE COURT:**  Is it correct that you used the

17 administrator account to reset passwords for vendor accounts

18 and other accounts to give you access to those accounts and any

19 Bitcoin indie accounts?

20         **THE DEFENDANT:**  Yes, Your Honor.

21         **THE COURT:**  Is it correct that you moved a total of

22 approximately 20,000 Bitcoin from various Silk Road vendor

23 accounts into a wallet over which you exercised control?

24         **THE DEFENDANT:**  Yes, sir.

25         **THE COURT:**  Is it correct that the value at that time

1   of the Bitcoin that was stolen was approximately $350,000?

2              **THE DEFENDANT:**  Yes, sir.

3          **THE COURT:**  Is it correct that on or about January 26

4   of 2013, you moved the Bitcoin into an account at Mt. Gox, a

5   digital currency exchange based in Japan?

6              **THE DEFENDANT:**  Yes, sir.

7          **THE COURT:**  Is it correct that on or about

8   January 27, 2013, you attempted to lull the manager of the Silk

9   Road site, Ross William Ulbricht, also known as Dead Pirate

10  Roberts (sic), also known as DPR, by telling him that you, too,

11  had had Bitcoin stolen from you?

12             **THE DEFENDANT:**  Yes, sir.

13         **THE COURT:**  And that this communication took place by

14  way of interstate wire; is that correct?

15             **THE DEFENDANT:**  Yes, sir.

16         **THE COURT:**  And is it correct that the government --

17  as far as you are concerned, the government could prove that

18  Ulbricht was in the Northern District of California on that

19  date when you were in Maryland?

20             **THE DEFENDANT:**  Yes, sir.

21         **THE COURT:**  Is it correct that between March and May

22  of 2013, you converted the Bitcoin into U.S. currency and

23  caused wire transfers of money totaling approximately $820,000

24  from the account at Mt. Gox into Quantum International

25  Investments LLC, an account you controlled as Fidelity?

1          **THE DEFENDANT:**  Yes, sir.

2          **THE COURT:**  Is it correct that on June 2nd of 2014,

3   you transferred funds from that Quantum Fidelity account into

4   an account in the joint names of yourself and a person known to

5   the parties?

6          **THE DEFENDANT:**  Yes, sir.

7          **THE COURT:**  And specifically, I'd like to ask you to

8   look at Page 4 of the plea agreement.  And that page has a

9   chart at the top which lists various financial transactions

10  with the dates and amounts listed.

11     Is it correct that the funds that are listed on this page

12  in this chart in each of those transactions were proceeds of

13  wire fraud?  Is that correct?

14         **THE DEFENDANT:**  Yes, sir.

15         **THE COURT:**  Is it correct that you carried out each

16  of those transactions with the intent to promote ongoing wire

17  fraud -- a wire fraud scheme and also to conceal and disguise

18  the nature, location, source and ownership, as well as the

19  origin of these illegal proceeds?

20         **THE DEFENDANT:**  Yes, sir.

21         **THE COURT:**  Now, during the time that you devised and

22  carried out the fraud and money laundering scheme, is it

23  correct that you were a Special Agent with the United States

24  Secret Service, and a member of the Electronic Crimes Task

25  Force, as well as the Baltimore Silk Road Task Force?

Case 3:15-cr-00319-RS   Document 169-7   Filed 06/13/18   Page 19 of 40
Case 3:15-cr-00319-RS   Document 232   Filed 04/02/18   Page 19 of 40

19

1   Is that correct?

2   **THE DEFENDANT:**  Yes, sir.

3   **THE COURT:**  And was that task force at that time

4   engaged in investigating Silk Road, its vendors and buyers, and

5   also Dead Pirate Roberts, for which there was an ongoing grand

6   jury investigation in the District of Maryland?

7   Is that correct?

8   **THE DEFENDANT:**  Yes, sir.

9   **THE COURT:**  Okay.  And you agree that the Baltimore

10  Silk Road grand jury investigation was an official proceeding?

11  **THE DEFENDANT:**  Yes, sir.

12  **THE COURT:**  Is it also correct that the activities

13  you engaged in obstructed, influenced and impeded the Baltimore

14  grand jury related to its Silk Road investigation, as well as

15  its resulting case in the District of Maryland against Ulbricht

16  amongst others?  Is that correct?

17  **THE DEFENDANT:**  That's correct, sir.

18  **THE COURT:**  And in particular, that activity operated

19  to obstruct and impede the ability of the investigation to

20  fully utilize a cooperator's access to Silk Road after the

21  fraud, and caused the task force and the grand jury to spend

22  time and effort to investigate the thefts from Silk Road that

23  you had committed, and created additional incentive for

24  Ulbricht to attempt to hire someone to kill a cooperator who

25  Ulbricht suspected of committing thefts that you in fact had

1  committed?  Is that right?

2     **THE DEFENDANT:**  Yes, sir.

3     **THE COURT:**  And it also had the effect, is it

4  correct, of obstructing, influencing and impeding the grand

5  jury investigation into Ulbricht in the District of Maryland?

6     **THE DEFENDANT:**  Yes, sir.

7     **THE COURT:**  And is it correct that you agree that you

8  acted corruptly in obstructing, influencing, and impeding the

9  grand jury's Silk Road investigation?

10     **THE DEFENDANT:**  Yes, sir.

11     **THE COURT:**  Is it correct that by May of 2014, there

12  was also an active San Francisco-based grand jury investigation

13  into potential misconduct by Drug Enforcement Administration

14  Special Agent Carl M. Force, IV?  Is that correct?

15     **THE DEFENDANT:**  Yes, sir.

16     **THE COURT:**  And that the San Francisco grand jury

17  subsequently began to investigate your conduct?

18     **THE DEFENDANT:**  Yes, sir.

19     **THE COURT:**  And you also agree that the San Francisco

20  grand jury investigation was, like the one in Maryland, an

21  official proceeding?

22     **THE DEFENDANT:**  Yes, sir.

23     **THE COURT:**  Is it correct that on or about May 28 of

24  2014, you were interviewed by a Special Agent with the Bureau

25  -- Federal Bureau of Investigation, and that you intentionally

1  misled that agent?

2          **THE DEFENDANT:**  Yes, sir.

3          **THE COURT:**  Is it correct that on November 13 of

4  2014, you were interviewed by a Special Agent from the

5  Department of Justice Office Inspector General, and that you

6  intentionally misled that agent as well?

7          **THE DEFENDANT:**  Yes, sir.

8          **THE COURT:**  During January and February of 2015, is

9  it correct that you consulted with another employee of the

10  United States Secret Service both before and after that

11  employee had an interview on the subject of the investigation

12  with Special Agents from the Department of Homeland Security

13  Office of Inspector General and the FBI?

14          **THE DEFENDANT:**  Yes, sir.

15          **THE COURT:**  Is it correct you met with that employee,

16  before and after the employee's interview --

17      (Reporter interruption)

18          **THE COURT:**  Oh, okay.

19      Is it correct that you met with the employee before and

20  after that employee's interview, and discussed the subject of

21  the interview, and agreed to tell a false consistent story

22  regarding searches conducted on a database controlled by the

23  Financial Crimes Enforcement Network, FinCEN?

24          **THE DEFENDANT:**  Yes, sir.

25          **THE COURT:**  Is it correct that on March 30 of 2015,

1  in the Northern District of California, you misrepresented

2  certain facts to agents with the FBI and the Internal Revenue

3  Service criminal investigations with respect to the full scope

4  of the FinCEN database searches?

5             **THE DEFENDANT:**  Yes, sir.

6             **THE COURT:**  And is it correct that you agree that

7  each of the interviews and actions described that we have just

8  reviewed were in connection with the San Francisco grand jury

9  investigation?

10             **THE DEFENDANT:**  Yes, sir.

11             **THE COURT:**  And you further agree that by corruptly

12  engaging another Secret Service agent to tell a false story to

13  federal agents and by lying to federal agents, you obstructed,

14  influenced and impeded a San Francisco-based grand jury

15  investigation into your criminal conduct and that of former DEA

16  Special Agent Carl M. Force, IV?

17             **MR. LEVIN:**  Your Honor, if I may?

18             **THE COURT:**  Yes.

19             **MR. LEVIN:**  Again, I may have misheard Your Honor.  I

20  believe it's a Secret Service employee, to the extent

21  Your Honor said "Secret Service agent."

22             **THE COURT:**  All right.

23             **MR. LEVIN:**  We would only correct that aspect.

24             **THE COURT:**  Let me go over that again.  Is it correct

25  that you -- you further agree that by corruptly encouraging

1  another Secret Service employee to tell a false story to

2  federal agents and by lying to federal agents yourself, that

3  had the effect of obstructing, influencing and impeding the

4  San Francisco-based grand jury investigation into your conduct,

5  and that of former DEA Special Agent Carl M. Force, IV?

6          **THE DEFENDANT:**  Yes, sir.

7          **THE COURT:**  Very well.  With respect to the charge in

8  the criminal information, Count 1, which charges you with a

9  violation of Title 18 United States Code Section 1957, money

10 laundering, how do you plead, Mr. Bridges?  Guilty or not

11 guilty?

12         **THE DEFENDANT:**  Guilty.

13         **THE COURT:**  With respect to Count 2 in the criminal

14 information that charges you with a violation of Title 18

15 United States Code Section 1512(c)(2), obstruction of justice,

16 how do you plead?  Guilty or not guilty?

17         **THE DEFENDANT:**  Guilty.

18         **THE COURT:**  I find that Mr. Bridges has made a

19 knowing, intelligent and voluntary waiver of his Constitutional

20 rights and entry of the guilty plea; that there is an

21 independent factual basis for each of the elements of each of

22 the charges; and that he is therefore adjudged guilty of a

23 violation of Title 18, United States Code Section 1957, money

24 laundering, and Title 18, United States Code

25 Section 1512(c)(2), obstruction of justice.

```
 1        I will refer the matter to U.S. Probation Office for

 2   preparation of a presentence report.

 3        Sentencing date?

 4             MS. HAUN:  Is it about 70 days?  Or is it --

 5             THE CLERK:  December 8th.

 6             MS. HAUN:  December 8th.

 7             THE CLERK:  Yes.

 8             MR. EVANS:  What day is that?

 9             THE CLERK:  Tuesday.

10             MS. HAUN:  Your Honor, could we request a special

11   setting in the afternoon?  I know Mr. Frentzen is in trial at

12   that time, and he would he like to be here as well.  And I know

13   that likely Mr. Levin and Mr. Denney will be flying from out of

14   town.

15             THE COURT:  Yes.

16        (Off-the-Record discussion between Defendant and Counsel)

17             MR. LEVIN:  I'm sorry; what was the date?

18        (Off-the-Record discussion between counsel)

19             THE COURT:  Well, if it's going to be specially set,

20   it doesn't have to be on Tuesday.  I'm flexible, if there's a

21   particular date someone wants to request.  I know there is

22   travel involved, and I can certainly accommodate you.

23             MR. LEVIN:  Thank you, Your Honor.  In light of the

24   travel that's involved, Monday would work better.

25             THE COURT:  Monday is fine.
```

1          **MS. HAUN:**  The 7th?

2          **THE COURT:**  Yes.  I think.

3          **THE CLERK:**  Looks like --

4          **THE COURT:**  Yes, I'm here.  That's the week before

5    I'm gone.  All right.  So the 7th at -- what's -- I'm flexible

6    on that date.  What time?

7          **MS. HAUN:**  Could we set it for 3:00 p.m., Your Honor?

8          **THE COURT:**  Yes.  3:00 p.m.

9       (Off-the-Record discussion between counsel)

10         **MR. LEVIN:**  I'm sorry, Your Honor.

11         **THE COURT:**  Okay.

12      (Off-the-Record discussion between counsel)

13         **MS. HAUN:**  Okay Your Honor.  For now we would like to

14   set it for 3:00 p.m., and then it might be that we file a

15   stipulation to adjust not the date, but the time.

16         **THE COURT:**  That's fine.  I think I'm fairly

17   flexible.  The only thing would be if there is a trial going on

18   in the morning.  And I don't think there is on that date, so I

19   can adjust it accordingly.

20         **MS. HAUN:**  Thank Your Honor.  The government would

21   like to raise one more thing with the Court.

22         **THE COURT:**  All right.

23         **MS. HAUN:**  Your Honor, under the remand statute, 18

24   United States Code Section 3143(a), detention in this case, a

25   remand is not mandatory.

 1     However, the statute reads that the Court shall order the

 2   detention unless the Court finds -- you, the Judge -- that

 3   there is clear and convincing evidence that the person is not

 4   likely -- the Defendant is not likely to flee or pose a danger.

 5   And so it's on the Court to make that determination.

 6     And just today, Your Honor, we had some information come

 7   to us that is concerning to the government, and we wanted to

 8   raise it with the Court.  And unfortunately, we just got this

 9   information today.  We have been exploring it this afternoon.

10     And that is that it's come -- and Pretrial Services we

11   have also just conferred with, and they had no knowledge of

12   this, either.

13     And the information is that the Defendant has been

14   actively trying to change his name and Social Security number

15   in the state of Maryland.  Since the -- since the time that he

16   executed his plea agreement.

17     And that's very concerning to the government, Your Honor.

18   And we wanted to bring that to the Court's attention.

19            **THE COURT:**  Mr. Levin?

20          **MR. LEVIN:**  Thank you, Your Honor.

21     It's my understanding that during his service as a Secret

22   Service agent, Mr. Bridges' identity was compromised on a few

23   occasions.  And then this summer he received a letter from the

24   Office of Personnel Management indicating that -- I believe

25   several of us received that letter that either work or worked

1   for the government -- indicating that there was hacking

2   involved, and people's personal information was jeopardized.

3        In light of -- it was only after that letter, in light of

4   that letter and all the other times his identity has been

5   compromised that Mr. Bridges, I believe it was on -- well,

6   petitioned the court that --

7             **THE DEFENDANT:**  Correct.

8             **MR. LEVIN:**  He petitioned the court, so it's a matter

9   of public record, for a name change.  Keeping the first name,

10  and taking -- petitioning the court to take a family member's

11  last name, is my understanding.

12            **THE DEFENDANT:**  I petitioned the court to take my

13  wife's name.

14            **MS. HAUN:**  Your Honor, actually, the government has

15  some additional information.  First of all, the last name, the

16  wife's last name -- which, he married the wife during the

17  pendency of this case, as the Court probably knows.  But the

18  first name was nothing remotely resembling anything having to

19  do with the wife.  It was a very odd name.

20       Also, although the Defendant is now saying that it was all

21  public record, he actually made several motions to seal or

22  limit inspection of the case record.

23       I think the most concerning thing here for the

24  government's perspective is that he failed to notify his

25  pretrial services officer, either here or in Maryland.  And to

 1  say the least, they were very surprised to learn this

 2  information today.  And it's concerning, because obviously, one

 3  can procure travel documents in other names.

 4       Also, the change of the -- the petition for the change of

 5  Social Security numbers.

 6       But at the time of Mr. Bridges, when he presented himself

 7  to the Court on these charges back in March, it was discovered

 8  that he had no fewer than four weapons in his possession, one

 9  of which was an assault weapon.  The government is of the view

10  that that was an illegally-possessed weapon.  And those have

11  been now accounted for, and are in the custody of the FBI.

12       However, it is concerning the Defendant is trying to

13  change his name to something that is completely different.

14  It's not a name change that has, like I said, any resemblance

15  to just his wife's name or his own name.

16       **MR. LEVIN:**  Your Honor, as I was in the process of

17  relating the facts to the Court, in fact Mr. Bridges

18  volunteered on the day he came out to California for his

19  initial appearance that he had firearms in his home.  He

20  volunteered that information.  It wasn't brought out that he

21  had them.  He had them.  He volunteered it, and he voluntarily

22  turned them over.  I believe they are in the hands of law

23  enforcement.  And they were transferred within days of the

24  initial appearance.  If my memory serves me correctly.

25       That's a separate issue.  He was released.  At the time --

1  at the time of the initial appearance, and at the time of

2  Mr. Bridges' release, the government was aware of the presence

3  of firearms.  So that really has no part in today's analysis.

4      With respect to the name change, once -- it was

5  Mr. Bridges' intention to notify Pretrial once the petition had

6  been granted.  It was pending.  And whether he was right or

7  wrong in thinking Pretrial only wanted to know once it was

8  changed, that is when he intended to disclose it to Pretrial.

9      But the fact of the matter remains, Your Honor,

10  Mr. Bridges has been fully compliant with all the terms and

11  conditions of his pretrial release.  He has -- and I think the

12  pretrial officer can certainly tell the Court that he has been

13  going to alcohol abuse counseling, even more than what was

14  required.  And he has been compliant with that.  He's come to

15  the court hearings.  He's pled guilty.  He's done everything

16  that one would expect one might --

17          **THE COURT:**  He's currently located in Maryland; he is

18  being supervised in Maryland?  Is that right?

19          **MS. HAUN:**  Correct, Your Honor.

20          **MR. EVANS:**  Correct.

21          **THE COURT:**  Okay.  Explain for me again, I'm not sure

22  I understand this reason that you've articulated, Mr. Levin,

23  for why he's changed his identity.

24      I mean, okay, there was a hacking incident.  And those of

25  us who work for the Federal Government have had to deal with

 1    that.  I'm not clear on why that's leading him to change his

 2    identity or seek to change it.

 3         **MR. LEVIN:**  Well, this was not the first time that

 4    Mr. Bridges' identity had been compromised.  But it had

 5    happened a few times during the course of his employment with

 6    Secret Service.  And he just decided that he should change his

 7    name.  And the Social Security number that he applied for is

 8    linked to his old Social Security number.  So...

 9         **THE COURT:**  You understand that the government's

10    concerned.  I mean, when we're concerned with looking at flight

11    risk, activity of this kind sends up a lot of red flags that

12    even if it had nothing to do with it, I -- I am not surprised

13    that they are bringing this to my attention, is the bottom

14    line.  Because if it's -- if it was carried forward, it would

15    perhaps provide an opportunity to utilize that new identity to

16    go elsewhere.  So it is a cause of considerable concern.

17         And so I suppose my question to you is:  What's going to

18    alleviate that concern for me?  I mean, give me a reason why I

19    shouldn't be quite distressed by this, and agree with the

20    government that it's -- we -- it's enough of a red flag that

21    I've got to do something about it.

22         **THE DEFENDANT:**  Could I speak directly to the Court,

23    Your Honor?

24         **THE COURT:**  Why don't you talk to your counsel about

25    how to answer the question.

1      (Off-the-Record discussion between Defendant and Counsel)

2          **MR. LEVIN:**  Your Honor, having consulted with

3    Mr. Bridges, it's my understanding Mr. Bridges consulted an

4    attorney prior to filing the documents.  And his -- his

5    attorney's counsel is what guided him to file the documents

6    that he filed.

7          **THE COURT:**  We don't know how -- what else he told

8    the attorney about his situation.  But I -- I suppose I don't

9    want to get -- I mean, that simply gives me some facts as to

10   what he was doing.  I -- I still find it curious why this is

11   going on at this time.

12        Let me now ask the government a question:  Were I inclined

13   not to require remand at this time, are there some additional

14   conditions that you think would be appropriate, such as there

15   will be no -- any effort at identity adjustment is to be

16   curtailed, and something, you know, along those lines?

17        I mean -- go ahead.

18        **MS. HAUN:**  Yes, Your Honor.  Not curtailed, but

19   absolutely forbidden.

20        **THE COURT:**  "Forbidden" is another way to say it,

21   yes.

22        **MS. HAUN:**  Just a couple things.  The reason I

23   mention the weapons is not because I'm proposing the danger to

24   the community.  I'm proposing that if he's procuring a new

25   identity, if he had been successful in that, that raises the

1  possibility he could go out under this new identity and procure

2  weapons, for example.

3            THE COURT:  (Inaudible)

4            MS. HAUN:  But really, the government's concern is he

5  didn't just petition for the name change once.  Our

6  understanding from the Circuit Court of Maryland -- and again,

7  I apologize for raising this today.  This information literally

8  came to us this morning, and we wanted to run down and make

9  sure that we were gathering the documents.  Had we known about

10 this before, from the Defendant, we certainly would have raised

11 this issue with -- through Counsel.

12     But I think that we understand from the Circuit Court of

13 Maryland that several name-change petitions filed by

14 Mr. Bridges were denied, and that this is the third, according

15 to the information we've received from them today.  So we have

16 the docket printed out, but we haven't been able to verify

17 three.

18            THE COURT:  Okay.

19            MS. HAUN:  But we would -- so on that basis, we would

20 seek remand.  If the Court is not inclined to remand the

21 Defendant today, then we would seek some additional conditions.

22     I know that Pretrial Services is here, and they have

23 proposed possibly a curfew.  Some electronic monitoring.  So, I

24 think that some of those conditions.  But as Your Honor said,

25 absolutely no attempts to change his identity.

1          **THE COURT:**  Right.  Let me follow up on your

2  question, on your point you just made with Mr. Levin.  Have

3  there been numerous efforts to change identity?

4          **MR. LEVIN:**  My understanding, Your Honor, is that

5  Mr. Bridges failed to check certain blocks, such as he did not

6  check the block that asked whether or not he had ever been

7  convicted of a sex offense, or a child -- child --

8          **THE DEFENDANT:**  If I was a convicted sexual offender.

9  So the court automatically denied, and I had to resubmit.  So

10  it's all on the same case.  It's not an additional case.

11          **THE COURT:**  Well, so let me confirm with you.  It's

12  not -- there weren't different names and different identities

13  and it would be denied and you tried a different one.  It was

14  all a part of one application process where denials were

15  occurring and revised forms were resubmitted?  Is that your

16  understanding?

17          **MR. LEVIN:**  That's my understanding, Your Honor.

18      (Off-the-Record discussion between Defendant and Counsel)

19          **THE COURT:**  Okay.  Our Pretrial Service officer, you

20  didn't come in from Maryland; you're here.  Right?

21          **PRETRIAL SERVICES OFFICER WILSON:**  That's correct.

22  Brad Wilson, U.S. Pretrial Services, San Francisco office.

23          **THE COURT:**  Right.  Ms. Haun mentioned some

24  additional conditions, and I certainly think a condition would

25  be that the -- that Mr. Bridges would -- is forbidden from

1    making any effort to change either his name or any personal

2    identifying information, including but not limited to Social

3    Security and the like.

4          What other conditions were you thinking of, with respect

5    to possibly electronic monitoring and --

6          **PRETRIAL SERVICES OFFICER WILSON:**  Your Honor, we

7    recommend that possibly the Defendant be placed on a location

8    monitoring with a curfew from 10:00 p.m. to 6:00 a.m. daily.

9          **THE COURT:**  Have you talked with your counterparts in

10   Maryland about just the feasibility of doing that?  I know

11   sometimes it depends upon the housing arrangement and all the

12   rest of it.

13         **PRETRIAL SERVICES OFFICER WILSON:**  Unfortunately, due

14   to the immediacy of the issue, I haven't had a chance.

15         **THE COURT:**  Right.  Okay.  Well, what I'm inclined to

16   do -- I do find this very troubling.  But I am prepared to at

17   this point accept the representation that this was, while not

18   what should have been done, not indicative of some effort to

19   begin a process of -- of fleeing.

20         So I am not going to remand the Defendant, but I am going

21   to add conditions.  And I think number one, forbidden,

22   absolutely forbidden from, and curtailing any ongoing efforts,

23   and not engaging in any further efforts to in any way change

24   identity or identifying information.

25         Is that understood, --

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  -- Mr. Bridges?

3          THE DEFENDANT:  (Nods head)

4          THE COURT:  No matter what reasoning you may have,

5     you can't do it.  And number two, I'm going to adopt the

6     electronic monitoring and the curfew suggestion.

7          But implementing that, I'm not sure how we do that because

8     Maryland is involved, and somebody has to talk to Maryland.

9          So how do we go about -- it's been a while since I used to

10    put pretrial conditions in place, so I frankly don't remember

11    exactly how we do it.  What do you need from me to do it?

12          MS. HAUN:  Your Honor, I would propose that simply

13    the government come up with a proposed order that we submit to

14    you today.

15          THE COURT:  Okay.

16          MS. HAUN:  And that you issue an order --

17          THE COURT:  All right.

18          MS. HAUN:  -- directing these conditions.  The one

19    other condition I would like to revisit is -- and I'm not

20    asking for a new condition; I just want the Court to be aware

21    of a condition of pretrial release that Judge James back in

22    March -- or was it April 1st?  It was either March 30th or

23    April 1st, Judge James ordered a condition related to the

24    Defendant's use of the computer, and access to the computer.

25          And I wanted to make this Court aware of that, and so that

1  you could underscore that that condition still pertains.  And
2  if we could talk about that condition here today.  Because I
3  think, frankly, that should also -- that would make the
4  government feel better.
5          **THE COURT:**  All right.
6          **MS. HAUN:**  If the Court is not willing to remand the
7  Defendant, it would give the government some comfort to know
8  that the Defendant has curtailed ability to use the computer.
9          **THE COURT:**  All right.  Let's see if I have the
10 actual -- Judge James' actual order.  I'm not sure I have her
11 release conditions.  So, I don't have the particular language
12 that Judge James imposed.
13     But let me do this.  Mr. Bridges, one of the conditions of
14 your pretrial release, as I understand it, that were imposed by
15 Judge James was that you -- there were restrictions on your
16 computer use.
17     Was it a complete restriction or --
18         **MR. LEVIN:**  No, Your Honor.  I believe it had to do
19 prohibiting Mr. Bridges from accessing any encrypted sites.  I
20 believe that was the restriction that was placed.
21         **MS. HAUN:**  It was a little broader than that,
22 actually.  It was any kind of so-called -- and you know what,
23 Your Honor?  Since we're talking about this today, I frankly
24 find it a little vague.
25     I think in the proposed order, the government will work

1    with Mr. Levin today to come up with some language.

2              THE COURT:  All right.  Oh, here it is.  I actually

3    have it.

4              MS. HAUN:  It's deep web or dark net sites the

5    Defendants is prohibited from accessing.  But I think the

6    government would also propose he can't use any third party to

7    access those sites on his behalf.  And I don't think that's a

8    condition right now.  For example, his wife.

9              THE COURT:  Well, I -- that doesn't sound -- that

10   sounds reasonable to me.  As long as it doesn't preclude any

11   third party from their own conduct.  Because we can't do that.

12             MS. HAUN:  (Nods head)

13             THE COURT:  But I'm looking at her release

14   conditions.  Frankly, I don't see anything on here that makes

15   reference to computer use.

16        It has the surrendering of the four firearms.  No access

17   to any proceeds of fraud, to include Bitcoin.

18        Okay.  Well, it says:

19             "No access to any proceeds of fraud to include

20             Bitcoin and to include Quantum, LLC or deep web

21             services such as 'TOB' network."

22        I don't know what that is.  I can't see it on here.  So if

23   you want to propose some computer restriction, I am prepared to

24   adopt it.

25             MS. HAUN:  (Nods head)

Case 3:15-cr-00319-RS   Document 632   Filed 04/02/18   Page 38 of 40   38

```
 1          THE COURT:  So your suggestion is you are going to
 2   get something to me.  Obviously, talk through it with
 3   Mr. Levin, and hopefully you won't have a particular problem
 4   with it.  But when are you going to present that to me?
 5          MS. HAUN:  Your Honor, I think we could present that
 6   by the close of business today, maybe give or take some time,
 7   depending on how long our conversation with Mr. Levin goes.
 8          THE COURT:  All right.
 9          MS. HAUN:  But I'm hopeful we could get that to you
10   by today.
11          THE COURT:  What's the situation, Mr. Bridges --
12   when's he -- he's here.
13          MR. LEVIN:  Tomorrow morning, early flight, so that's
14   not an issue.  Thank you.
15          THE COURT:  All right.  Well, I will be here.  Craft
16   something.
17          MS. HAUN:  Some point tonight, Your Honor, I guess I
18   would say.
19          THE COURT:  Hopefully not tonight, but at some point,
20   promptly, I will have something in front of me to sign.  And
21   I'll do that.  And on that basis, I will maintain the release
22   conditions.
23      And just to underscore this discussion, Mr. Bridges, all
24   of the conditions that are already in place remain completely
25   in place.  So we're adding conditions.
```

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  So this is not a new set, in that sense.

3     And I want you to be quite aware of the fact that all the

4     existing conditions continue to apply.  And then we will be

5     discussing some additional ones.  Because you're proposing in a

6     supplemental order, as opposed to a refashioned order.

7          MS. HAUN:  Correct, Your Honor.  It would simply say

8     "All prior conditions pertain, and in addition, the following

9     additional conditions."

10          THE COURT:  All right.  Okay.  Well, I will be

11     looking for that.  And, see you then.

12          MS. HAUN:  Thank you, Your Honor.

13          MR. LEVIN:  Thank you, Your Honor.

14          THE COURT:  Thank you.

15       (Proceedings concluded)

16

17

18

19

20

21

22

23

24

25

Case 3:15-cr-00319-RS   Document 232   Filed 04/01/16   Page 40 of 40

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5         I, BELLE BALL, Official Reporter for the United States

6    Court, Northern District of California, hereby certify that the

7    foregoing is a correct transcript from the record of

8    proceedings in the above-entitled matter.

9

10         /s/  *Belle Ball*_____

11              Friday, April 1, 2016

12         Belle Ball, CSR 8785, CRR, RDR

13

14

15

16

17

18

19

20

21

22

23

24

25