UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

------------------------------------------------------------

| | |
|---|---|
| United States of America, | : |
| Plaintiff, | : Case Number 3:15-cr-00319-RS |
| | : |
| v. | : Declaration Pursuant to |
| | : 28 U.S.C. §1746 |
| Shaun Bridges, | : |
| | : |
| Defendant. | : |

------------------------------------------------------------

## DECLARATION OF DEFENDANT SHAUN BRIDGES PURSUANT TO 28 U.S.C. §1746

SHAUN BRIDGES, states as follows, as provided for in 28 U.S.C. §1746:

1. I am the Defendant/Movant herein and file this declaration in support of my motion, filed pursuant to 28 U.S.C. §2255, for an Order vacating both my sentence and my waiver of indictment, and directing further proceedings consistent with the foregoing.

2. In May of 2017, I learned that the plea agreement in the above-captioned matter (the "Matter") overstated the statutory maximum possible term of imprisonment for my money laundering conviction. The plea agreement's misstatement was repeated during my August 31, 2015 arraignment and guilty plea, in the presentence report, and in the Information Relative to a Criminal Action. My attorney, Steve Levin, Esq., never informed me of the correct statutory maximum term of imprisonment for the money laundering count.

3. When I learned of the correct maximum period of incarceration for my money laundering conviction, I immediately contacted the attorney who filed the *Anders* brief in my appeal of the Matter and attorney Scott L. Fenstermaker, Esq., my counsel in the instant motion. Had I known that I only faced a 10-year maximum term of imprisonment for my money

1

laundering conviction, I would not have waived my right to indictment or pled guilty and would have, instead, challenged the allegations in the Matter at trial.

4.   Because of the government's, my trial counsel's, and the Court's overstatement of my maximum exposure on the money laundering count, my calculation of the risks and benefits of either going to trial or pleading guilty in the Matter was based upon erroneous information.  I pled guilty because of my fear that I might be sentenced to up to 20 years for the money laundering conviction.  Had I realized that I could only have received a maximum of ten years on that count, I would not have pled guilty.

5.   Based upon my understanding that I faced possibly 20 years of imprisonment, should I be convicted at trial of money laundering, the plea agreement in the Matter made pleading guilty appear to the more prudent alternative than risking a 20-year sentence, as the plea agreement provided for a non-binding Sentencing Guidelines' range of 57 to 71 months.  While I understood that the plea agreement's proposed Sentencing Guidelines' range was advisory and non-binding, I also felt confident that it effectively capped my exposure at 71 months of imprisonment, an expectation that proved correct.  When held in comparison with my expectation that I might reasonably receive a sentence close to the 20-year maximum for the money laundering count, as a result of the nature of the allegations and my status as a law enforcement agent at the time of the crimes' alleged commission, I feared the worst, should I be found guilty after trial.

6.   I saw a potential sentence of five years and 11 months, (71 months), as a relief, compared with the possible 20-year sentence which the plea agreement claimed that I faced.  As a result, I reluctantly accepted the government's offer.  Had I known that the potential maximum was merely ten years, I would have been unwilling to accept the possibility of a 71-month

sentence, while waiving my rights to challenge the government's evidence, which I saw as flawed.

7.   My counsel and I discussed the government's case against me and its significant weaknesses.  It relied on an unidentified custodian of records from a corrupt and defunct foreign digital currency exchange.  That corrupt defunct foreign digital currency exchange was itself under criminal investigation for falsifying business records, manipulating digital currency exchanges, and conducting numerous fraud-based cross-border financial crimes.  The government's case would have been further complicated by admissibility and reliability uncertainties associated with foreign evidence.  In addition, the government's ability to prove specified unlawful activity was, at best, thin, particularly in light of its reliance on hearsay chat logs from the Silk Road administrator's personal computer.  These chat logs are, at best, of suspect reliability.

8.   When considering pleading guilty to the obstruction count contained in my information, I understood that because of organizational and internal-jurisdictional requirements imposed by the involvement of the Public Integrity Section of the Department of Justice and various law enforcement agencies, I would be required to plead guilty to obstruction of justice in order to avoid prosecution at trial for the money laundering count.  I was advised by trial counsel that because of the grouping rules of the Sentencing Guidelines, I would not face any additional sentencing exposure by way of my guilty plea to the obstruction count, as both the obstruction count and the money laundering count carried the exact same statutory maximum term of imprisonment and would not, therefore, result in any effective additional sentence for the obstruction charge.  As a result, my misunderstanding of the difference between the maximum exposures to prison for my obstruction and money laundering counts skewed my risk-reward

calculation in entering my guilty pleas to these two counts. Had I been properly informed and fully aware, I would not have entered a guilty plea to either count and would have proceeded to trial, which was my better choice, under the circumstances as they were, rather than as I mistakenly understood them to be.

9. My understanding was that, as a condition of receiving the government's various promises, I was required to waive my constitutional and statutory right to indictment. As a result, in order to enjoy the benefits of the agreement that I entered into as a result of the misstatements, I understood that I had no choice but to waive indictment or forfeit the benefits of the plea agreement.

10. In conclusion, my decision to waive indictment and plead guilty to the resulting two-count information rested upon my misunderstanding of law regarding the maximum penalty associated with my money laundering conviction. Had I been properly informed, I would have insisted on being charged by way of indictment and exercising my right to trial by jury.

11. I state under penalty of perjury that the foregoing is true and correct.

Dated:   May 25, 2018
         Terre Haute, Indiana

_____
Shaun Bridges
Defendant